Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Mei Yao
Petitioner,
v.
James JANECHA, the Warden of the Adelanto ICE Processing Center;

Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;

Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;

Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and

Todd BLANCHE, in the Official Capacity, Attorney General of the United States.
Respondents

NO.

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes; Request for Declaratory and Injunctive Relief

**IMMEDIATE RELEASE REQUESTED**

Master calendar hearing set September 1, 2026

## I. Introduction

1. Petitioner Mei Yao is a national of the People's Republic of China who came to the United States lawfully and who has done everything our laws ask of an asylum seeker. She was inspected and admitted on a B-1/B-2 nonimmigrant visa on January 19, 2024. She is a beneficiary of a timely filed affirmative application for asylum that remains pending. She appeared as directed for her biometrics appointment. U.S. Citizenship and Immigration Services granted her employment authorization—valid through August 21, 2029—and she obtained a Social Security number. She has worked lawfully and lived openly at a known address in Monterey Park, California, where her husband, with whom her asylum claim is joined, also resides. She has no criminal history of any kind.

2. On July 25, 2026, Ms. Yao flew on an ordinary domestic flight. She never left the United States. Upon her arrival at Los Angeles International Airport, ICE officers arrested her. She was given no notice. She was given no hearing. No neutral decision-maker of any kind reviewed the decision to take away her liberty before it was taken. She has been confined at the Adelanto ICE Processing Center ever since.

3. Because Ms. Yao traveled only within the United States, she is not an "arriving alien" or an applicant for admission under 8 U.S.C. § 1225. She is a lawfully admitted noncitizen, she is not subject to mandatory detention, and her detention is discretionary under 8 U.S.C. § 1226(a)—as the Immigration Judge's own order confirms. A discretionary decision by the enforcing agency to seize a person who is living peaceably in the community—while her asylum application is pending—is precisely the kind of executive action the Due Process Clause was written to constrain.

4. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). Nothing about Ms. Yao's arrest was quick, unexpected, or impracticable to plan around. She was a domestic air traveler with a pending asylum application,

valid work authorization, and a fixed address the Government has had on file since 2024; Respondents had every opportunity to give her notice and an opportunity to be heard before seizing her. They gave her neither.

5. Twenty days after her seizure, on August 14, 2026, an Immigration Judge denied a custody redetermination on a preprinted form order, checking a box and writing a single sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." The order contains no written findings and no discussion of the evidence. That belated hearing did not cure the constitutional violation, and it was not itself constitutionally adequate. As the Central District has held on this precise question, "[a] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing," and "the appropriate remedy for the deprivation is release from custody." *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4 (C.D. Cal. May 20, 2026); *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at 7 (C.D. Cal. Apr. 15, 2026). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A.T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

6. Ms. Yao does not ask this Court to order another bond hearing. She asks this Court to issue the writ and order her immediate release on reasonable conditions of supervision, and to bar Respondents from re-detaining her absent notice and a constitutionally adequate pre-deprivation hearing before a neutral adjudicator.

## II. Jurisdiction

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201–02 (Declaratory Judgment Act). Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(1), (c)(3).

8. Federal courts retain jurisdiction under § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S.

510, 516–17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal—none exists—and the jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not bar this action. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018). Nor does 8 U.S.C. § 1226(e) bar review: it forecloses review of the Attorney General's discretionary judgment, but not constitutional or legal challenges to the framework of a custody determination. *Demore*, 538 U.S. at 516–17; *Singh v. Holder*, 638 F.3d 1196, 1200–02 (9th Cir. 2011).

9. The Court is directed to grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## **III. Venue**

10. Venue is proper in this district. A habeas petition challenging present physical confinement must be filed in the district of confinement and name the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, which lies within the Central District of California. 28 U.S.C. §§ 84(c), 2241(a).

## **IV. Parties**

11. Petitioner Mei Yao is a native and citizen of the People's Republic of China, born October 14, 1982. She is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, CA 92301, under A# 233-897-452.

12. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian, with day-to-day control over the facility where she is confined. *Padilla*, 542 U.S. at 435.

13. Respondent Jaime Rios is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, and is the ICE official with authority over Petitioner's detention and custody determinations. He is sued in his official capacity.

14. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

15. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the immigration laws. *See* 8 U.S.C. § 1103(a).

16. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## V. Exhaustion of Administrative Remedies

17. No statutory exhaustion requirement applies to a § 2241 petition challenging the constitutionality of immigration detention, and judicially created exhaustion is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused where administrative remedies are inadequate or not efficacious, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

18. Those conditions are met. The constitutional injury Petitioner alleges—deprivation of liberty without pre-deprivation process—is one the immigration courts have no jurisdiction to adjudicate and no power to remedy. An Immigration Judge cannot undo a completed constitutional violation or order release as a remedy for the denial of pre-deprivation process; the only relief the agency can offer is a custody redetermination—that is, more of the after-the-fact process that the case law holds insufficient to cure the injury. *See Zaitsev*, 2026 WL 1047942, at 7; *Zepeda Perez v. Santacruz*, 2026 WL 980492, at 5 (C.D. Cal. Apr. 9, 2026). Requiring exhaustion would also be futile and would compound the irreparable harm of each additional day of unlawful custody.

19. To the extent Respondents contend that Petitioner must first appeal the August 14, 2026 custody denial to the Board of Immigration Appeals, that argument fails for the same reasons. Petitioner reserved appeal, and any appeal is not due until September 14, 2026; briefing and decision would take months more, during which Petitioner would remain confined. The Board reviews the Immigration Judge's discretionary weighing; it cannot declare the pre-deprivation violation, cannot hold the agency's own burden-allocation regulation unconstitutional, and cannot order release as a remedy for a constitutional deprivation. Exhaustion is therefore inadequate, futile, and productive of irreparable injury. *Hernandez*, 872 F.3d at 988.

## VI. Statement of Facts

### A. Lawful Admission, Pending Asylum Application, Biometrics, and Lawful Employment.

20. Petitioner is a native and citizen of the People's Republic of China. She came to the United States because she fears persecution in China.

21. On January 19, 2024, Petitioner was inspected and lawfully admitted to the United States on a valid B-1/B-2 nonimmigrant visa at Los Angeles. She did not enter without inspection.

22. Petitioner's husband timely filed an affirmative application for asylum (Form I-589) with U.S. Citizenship and Immigration Services, and Petitioner was included in that application. That application remains pending. Petitioner has a strong incentive to appear and prosecute it: if returned to China, she fears persecution.

23. On February 16, 2024, USCIS issued Petitioner an Application Support Center appointment notice (receipt number ZLA2470940790) directing her to appear for biometrics collection at the El Monte Application Support Center on March 4, 2024. Petitioner appeared as directed, and her biometrics were collected and processed that day. She has never failed to appear for any immigration appointment.

24. Consistent with the pending application, USCIS granted Petitioner employment authorization under category (c)(8), valid from August 22, 2024 through August 21, 2029, and she obtained a Social Security number. She has since lived openly at a known address in

Monterey Park, California, worked lawfully, established community ties, and maintained a spotless record with no criminal history whatsoever.

25. Petitioner's husband resides in the United States and their asylum claims are joined in a single pending application. Her home, her family, and her livelihood are here. She has no reason to abscond and every reason to remain and prosecute her claim.

**B. Petitioner's Arrest at the Airport—After a Domestic Flight, Without Any Notice or Hearing.**

26. On July 25, 2026, Petitioner traveled on a domestic flight. She did not depart the United States, did not travel internationally, and did not present at any border or port of entry seeking admission. She was, at all times, a lawfully admitted noncitizen present within the United States.

27. Upon her arrival at Los Angeles International Airport, ICE officers arrested Petitioner, without a judicial warrant, without any prior notice, and without a hearing. No judge, no magistrate, and no Immigration Judge—no neutral decision-maker of any kind—reviewed the decision to deprive her of her liberty before it was taken.

28. Because Petitioner's travel was purely domestic, she is not an "arriving alien" or applicant for admission subject to 8 U.S.C. § 1225. She is not subject to mandatory detention. Her detention is discretionary under 8 U.S.C. § 1226(a). The Immigration Judge's August 14, 2026 order confirms as much, identifying the authority for her detention as INA § 236(a).

29. Petitioner was transported and delivered to the Adelanto ICE Processing Center, where she has remained in continuous custody. She has no criminal history and had never before been detained.

30. There was no emergency, no exigency, and no risk of flight that pre-deprivation notice would have created and that the Government could not have managed. Petitioner was included in a pending asylum application, had obtained work authorization, had complied with every immigration obligation imposed on her, and lived at an address known to the Government. Providing notice and a hearing before any arrest was entirely practicable. Respondents simply did not do it.

31. Petitioner's confinement has taken a serious toll. She is depressed, sleeps poorly, and is unable to assist in the preparation of the asylum claim she shares with her husband.

**C. The Government Charged Petitioner Only After Seizing Her, and the Belated Custody Hearing Was Cursory.**

32. Only after Petitioner was seized did the Government place her in removal proceedings. Executive Office for Immigration Review records reflect a docket date of July 29, 2026—four days after her arrest—and a master calendar hearing set for September 1, 2026 at 1:00 p.m. before Immigration Judge Steven Marcus of the Adelanto Immigration Court. The case remains pending; no order of removal has issued.

33. On August 14, 2026—twenty days after Petitioner was seized—the Immigration Judge conducted a custody redetermination under 8 C.F.R. § 1236 and denied release the same day.

34. The denial issued on a preprinted form. The Immigration Judge checked the box marked "Denied, because" and supplied a single sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." The order contains no written findings of fact, no discussion of the evidence, and no explanation of why a lawfully admitted asylum applicant with valid employment authorization, a fixed address, a spouse in the United States, an unblemished record, and perfect compliance with every immigration obligation was found certain to abscond. The order states that the reasons were articulated orally and preserved only in a Digital Audio Recording.

35. Consistent with the agency's regulations, the burden at that hearing rested on Petitioner to prove that she is not a flight risk. *See* 8 C.F.R. § 1236.1(c)(8); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner reserved appeal, which is due September 14, 2026. She remains detained.

## VII. Legal Argument

**A. Petitioner Holds a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before Respondents Seized Her.**

36. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). That protection runs to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *accord Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Demore*, 538 U.S. at 523.

37. The Government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Because Petitioner is a § 1226(a) detainee and not subject to mandatory detention, no statute compelled her seizure. Respondents' decision to take her into custody was a pure exercise of executive discretion over a person living at liberty in the community—and is therefore subject to the full requirements of the Due Process Clause, including its requirement of pre-deprivation process.

38. A noncitizen living at liberty in the United States has a due-process interest in "an opportunity or a hearing before [s]he is deprived of any significant protected interest." *R.A.N.O. v. Wofford*, 2026 WL 40507, at 7 (E.D. Cal. Jan. 6, 2026) (emphasis in original); *see also E-M v. Hermosillo*, 2026 WL 883776, at 6 (D. Or. Mar. 31, 2026); *Singh v. Noem*, 2026 WL 766228, at 9 (D.N.M. Mar. 18, 2026). The rule that process must precede deprivation is the constitutional default. *Logan*, 455 U.S. at 436. Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted). This is not such a case.

39. Nor did any ICE administrative warrant supply the missing process. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001). A warrant the enforcing agency writes for itself is the opposite of neutral review. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011) (risk of erroneous deprivation is reduced where a neutral decision-maker, rather than ICE alone, makes custody determinations).

**B. Every Mathews Factor Confirms That Pre-Deprivation Process Was Required.**

40. What process is due is determined by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected; the risk of erroneous deprivation and the value of additional safeguards; and the Government's interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Each factor favors Petitioner.

41. First, the private interest is at its maximum. Petitioner's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Liberty permits her to live in the community with her husband, work under the authorization the Government itself granted her, prosecute the asylum claim they share, appear at her September 1, 2026 hearing, and "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

42. Second, the risk of erroneous deprivation from a unilateral ICE arrest reviewed by no one is high, and pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of liberty. *Singh v. Noem*, 2026 WL 766228, at 9. Had Petitioner been heard before her seizure, she could have presented her lawful admission, her work authorization, her perfect record of appearances, her community ties, and her pending asylum claim—demonstrating that she is neither a danger nor a flight risk.

43. Third, the Government's interest in seizing Petitioner without any prior process is low. Civil immigration detention is not punitive; the only legitimate interests are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. Petitioner presents neither concern—she has no criminal history and every incentive to appear. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507, at 7 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). The burden of providing notice and a hearing is minimal—"[i]n immigration court, custody hearings are routine," *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)—while "[t]he costs to the public of immigration detention are 'staggering.'" *Hernandez*, 872 F.3d at 996. This is not the "special instance … where post-deprivation process is all that is due." *Zinermon v. Burch*, 494 U.S. 113, 139 (1990).

**C. The Belated Bond Hearing Did Not Cure the Violation, and the Court Should Not Order Another.**

44. Respondents will point to the August 14, 2026 custody hearing. That is no answer. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at 7; *accord Zepeda Perez*, 2026 WL 980492, at 5; *E.G.M. v. Scott*, 2026 WL 914803, at 6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies … do not cure the constitutional violation"). In *Mikayelyan v. Giles*, the Central District confronted this precise posture and, even though the petitioner had already received a bond hearing at which the Immigration Judge denied bond, granted the writ and ordered release, holding "the appropriate remedy for the deprivation is release from custody." No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 4 (C.D. Cal. May 20, 2026); *accord Singh v. Noem*, 2026 WL 766228, at 10.

45. The reason is structural: the injury is the detention. Even if Petitioner were given a flawless hearing tomorrow and released, she will already have suffered the harm of her potentially erroneous detention. *See Domingo v. Kaiser*, 2025 WL 1940179, at 3 (N.D. Cal. July 14, 2025). Ordering a do-over hearing would ratify the very sequence the Constitution forbids—seize first, justify later—and would leave Respondents free to repeat it tomorrow. Petitioner therefore does not seek, and does not consent to, an order directing a further bond hearing in lieu of release.

46. That conclusion is doubly warranted here, because the single custody determination Petitioner has received was itself constitutionally deficient—conducted under a regulation that placed the burden on her, resolved without individualized written findings, and memorialized only in an audio recording. *See* Count Three, *infra*.

**D. The Only Adequate Remedy Is Immediate Release.**

47. "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Where the Government has detained a person without the pre-deprivation process the Constitution requires, "the appropriate remedy for the deprivation is release from custody." *Mikayelyan*, Dkt. No. 19, at 4. Courts in this District have ordered release on comparable facts, recognizing that the deprivation of physical liberty is itself irreparable harm. *See, e.g.*, *Dai v. Janecha*, No. 5:26-cv-03966-PD, Dkt. No. 10 (C.D. Cal. July 24, 2026) (ordering release of Chinese asylum applicant admitted on a B-1/B-2 visa and seized after a domestic flight to Los

Angeles); *Jin Liu v. Noem*, No. 5:26-cv-00325-CAS-DTB (C.D. Cal. Jan. 30, 2026); *Tur-Sarksyan v. Bondi*, No. EDCV 26-00696-MWF (C.D. Cal. Feb. 23, 2026).

## VIII. Claims for Relief

### COUNT ONE

***Violation of Procedural Due Process — Detention Without Pre-Deprivation Notice and Hearing (U.S. Const. amend. V)***

48. Petitioner re-alleges and incorporates by reference each preceding paragraph.

49. Petitioner held a constitutionally protected liberty interest in remaining free from physical confinement. Respondents deprived her of that interest on July 25, 2026 without notice, without a hearing, and without review by any neutral decision-maker.

50. No exigency, emergency, or impracticability excused pre-deprivation process. Petitioner was a domestic air traveler with lawful admission, valid work authorization, and a pending asylum application; notice and a hearing before any arrest were entirely practicable. The violation was complete upon her detention and was not cured by the belated bond hearing held twenty days later. The Court should grant the writ and order Petitioner's immediate release.

### COUNT TWO

***Violation of Substantive Due Process — Detention Untethered to Any Permissible Purpose (U.S. Const. amend. V)***

51. Petitioner re-alleges and incorporates by reference each preceding paragraph.

52. Civil immigration detention may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings. *Zadvydas*, 533 U.S. at 690. It may not be punitive.

53. Petitioner has no criminal history and has been found by no adjudicator to be dangerous. She entered lawfully, worked lawfully under authorization the Government granted her, appeared for every appointment the Government scheduled, and is a beneficiary of a pending asylum application she shares with her husband, who lives in this District—giving her the strongest

incentive to appear. Her detention is therefore not reasonably related to any legitimate purpose and violates substantive due process. The Court should grant the writ, order her immediate release, and enjoin Respondents from re-detaining her absent constitutionally adequate pre-deprivation process.

**COUNT THREE**

***Violation of Procedural Due Process — The August 14, 2026 Custody Determination Was Itself Constitutionally Inadequate***

***(U.S. Const. amend. V)***

54. Petitioner re-alleges and incorporates by reference each preceding paragraph.

55. This claim is squarely within the Court's habeas jurisdiction. Section 1226(e) bars review of "the Attorney General's discretionary judgment" regarding detention, but it does not bar "challenges [to] the statutory framework that permits [a noncitizen's] detention without bail," *Demore*, 538 U.S. at 517, or constitutional challenges to the procedures used, *Singh v. Holder*, 638 F.3d at 1200–02; *Jennings*, 583 U.S. at 294–95. Petitioner does not ask this Court to reweigh the Immigration Judge's discretion. She challenges the constitutional adequacy of the process she received.

56. *Burden of proof.* Where the Government seeks to confine a noncitizen who is not subject to mandatory detention, due process requires that the Government bear the burden of justifying continued detention by clear and convincing evidence. *Singh v. Holder*, 638 F.3d at 1203–05; *Hernandez*, 872 F.3d at 990–91; *cf. Addington v. Texas*, 441 U.S. 418, 427 (1979) (heightened standard required where individual liberty is at stake). At Petitioner's August 14, 2026 hearing the burden ran the other way: under 8 C.F.R. § 1236.1(c)(8) and *Matter of Guerra*, 24 I. & N. Dec. at 40, Petitioner was required to prove that she is not a flight risk. Allocating the risk of error to the person whose physical liberty is at stake inverts the constitutional default and cannot be reconciled with *Mathews*.

57. *Alternatives to detention and individualized findings.* A custody determination comports with due process only if the adjudicator meaningfully considers the noncitizen's individual circumstances, including her ability to pay and the availability of alternative conditions of supervision. *Hernandez*, 872 F.3d at 990–91. The form order here recites the

conclusion that "no amount of bond, even if coupled with alternatives to detention," could suffice, but identifies no evidence supporting that conclusion and engages with none of the facts that bear on it—Petitioner's lawful admission, her employment authorization valid through 2029, her fixed address, her spouse and home in this District, her perfect record of appearing when directed, and her complete absence of criminal history.

58. *Statement of reasons.* Due process requires "a written statement by the factfinders as to the evidence relied on and reasons" for a decision depriving a person of liberty. *Morrissey*, 408 U.S. at 489; *see also Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). A checked box and one conclusory sentence, with the reasoning preserved only in an audio recording, does not permit meaningful review by this Court or by the Board and does not satisfy the Constitution.

59. Because the only custody determination Petitioner has received was constitutionally inadequate, it cannot supply a lawful basis for her continued confinement, and it cannot be treated as curing the violations alleged in Counts One and Two. The Court should grant the writ and order Petitioner's immediate release.

## IX. Prayer for Relief

WHEREFORE, Petitioner Mei Yao respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's detention—effected on July 25, 2026 without notice and without a hearing before a neutral adjudicator prior to the deprivation of her liberty—is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that the August 14, 2026 custody determination neither cured that violation nor independently satisfied due process;

(4) Issue a Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody IMMEDIATELY, on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any new restraint—including electronic monitoring—absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary;

(5) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(6) Enjoin Respondents from re-detaining Petitioner absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention;

(7) Enjoin Respondents from transferring Petitioner outside the Central District of California pending resolution of this Petition;

(8) Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(9) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 19, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.
Attorney for Petitioner
CA Bar No. 348506
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on August 19, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski
Hovhannes Bayburtski, Esq.
Attorney for Petitioner