UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MEI YAO,<br>Petitioner,<br>v.<br>JAMES JANEC[K]A, Warden of the Adelanto ICE Processing Center, et al.,<br>Respondents. | Case No. 5:26-cv-04735-DTB<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.
## PROCEEDINGS

On August 19, 2026, petitioner Mai Yao ("Petitioner"), through counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by the supporting Affidavit of Petitioner ("Petitioner's Decl.") (Docket No. 1-5) and four supporting exhibits (Docket Nos. 1-1 thru 1-4).

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates her right to procedural due process under the Fifth Amendment; (2) Petitioner's detention violates her right to substantive due process under the Fifth

Amendment; and (3) the August 14, 2026, custody determination was itself constitutionally inadequate violating Petitioner's right to procedural due process under the Fifth Amendment. (Docket No. 1 at 12-14).[1]

On August 27, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5 at 2, 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 7), accompanied by three exhibits (Docket No. 7-1). In their Answer, Respondents state that to the extent that Petitioner may seek to challenge her arrest and detention, the claims are moot as the Immigration Judge's ("IJ") August 14, 2026 bond order became the legally operative basis for Petitioner's current state of custody and, to the extent that Petitioner challenges her arrest and detention, the events are now outside of habeas jurisdiction. (Docket No. 7 at 2). Respondents further argue that any due process arguments may only be directed to the August 14, 2026 bond denial. (Id.).

On August 28, 2026, Petitioner filed a Reply alleging that Respondents failed to dispute the facts alleged in the Petition. (Docket No. 8 at 1).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of the People's Republic of China who came to the United States because she fears persecution in China. (Petition at ¶ 20).

On January 19, 2024, Petitioner was inspected and lawfully admitted to the United States on a valid B-1/B-2 nonimmigrant visa at Los Angeles. (Id. at ¶ 21).

/ / /

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is based on the allegations in the Petition.

Petitioner's husband timely filed an affirmative application for asylum (Form I-589) with U.S. Citizenship and Immigration Services ("USCIS"), and Petitioner was included in that application. (Id. at ¶ 22). That application remains pending. (Id.). Petitioner has a strong incentive to appear and prosecute it: if returned to China, she fears persecution. (Id.).

On February 16, 2024, USCIS issued Petitioner an Application Support Center appointment notice (receipt number ZLA2470940790) directing her to appear for biometrics collection at the El Monte Application Support Center on March 4, 2024. (Id. at ¶ 23). Petitioner appeared as directed, and her biometrics were collected and processed that day. (Id.). She has never failed to appear for any immigration appointment. (Id.).

Consistent with the pending application, USCIS granted Petitioner employment authorization under category (c)(8), valid from August 22, 2024 through August 21, 2029, and she obtained a Social Security number. (Id. at ¶ 24). She has since lived openly at a known address in Monterey Park, California, worked lawfully, established community ties, and maintained a spotless record with no criminal history whatsoever. (Id.).

Petitioner's husband resides in the United States, and their asylum claims are joined in a single pending application. (Id. at ¶ 25). Her home, her family, and her livelihood are here. (Id.). She has no reason to abscond and every reason to remain and prosecute her claim. (Id.).

On July 25, 2026, Petitioner traveled on a domestic flight. (Id. at ¶ 26). She did not depart the United States, did not travel internationally, and did not present at any border or port of entry seeking admission. (Id.). She was, at all times, a lawfully admitted noncitizen present within the United States. (Id.).

Upon her arrival at Los Angeles International Airport, ICE officers arrested Petitioner, without a judicial warrant, without any prior notice, and without a

hearing. (Id. at ¶ 27). The decision to deprive her of her liberty before it was taken was not subject to any review by a neutral adjudicator. (Id.).

Because Petitioner's travel was purely domestic, she is not an "arriving alien" or applicant for admission subject to 8 U.S.C. § 1225. (Id. at ¶ 28). She is not subject to mandatory detention. (Id.). Her detention is discretionary under 8 U.S.C. § 1226(a). (Id.). The Immigration Judge's August 14, 2026 order confirms as much, identifying the authority for her detention as INA § 236(a). (Id.).

Petitioner was transported and delivered to the Adelanto ICE Processing Center, where she has remained in continuous custody. (Id. at ¶ 29). She has no criminal history and had never before been detained. (Id.).

There was no emergency, no exigency, and no risk of flight that pre-deprivation notice would have created and that the Government could not have managed. (Id. at ¶ 30). Petitioner was included in a pending asylum application, had obtained work authorization, had complied with every immigration obligation imposed on her, and lived at an address known to the Government. (Id.). Providing notice and a hearing before any arrest was entirely practicable. (Id.). Respondents simply did not do it. (Id.).

Petitioner's confinement has taken a serious toll. (Id. at ¶ 31). She is depressed, sleeps poorly, and is unable to assist in the preparation of the asylum claim she shares with her husband. (Id.).

Only after Petitioner was seized did the Government place her in removal proceedings. (Id. at ¶ 32). Executive Office for Immigration Review records reflect a docket date of July 29, 2026 - four days after her arrest - and a master calendar hearing set for September 1, 2026 at 1:00 p.m. before Immigration Judge Steven Marcus of the Adelanto Immigration Court. (Id.). The case remains pending; no order of removal has been issued. (Id.).

/ / /

On August 14, 2026 - twenty days after Petitioner was seized – the Immigration Judge conducted a custody redetermination under 8 C.F.R. § 1236 and denied release the same day. (Id. at ¶ 33).

The denial is issued on a preprinted form. (Id. at ¶ 34). The Immigration Judge checked the box marked "Denied, because" and supplied a single sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." (Id.). The order contains no written findings of fact, no discussion of the evidence, and no explanation of why a lawfully admitted asylum applicant with valid employment authorization, a fixed address, a spouse in the United States, an unblemished record, and perfect compliance with every immigration obligation was found certain to abscond. (Id.). The order states that the reasons were articulated orally and preserved only in a Digital Audio Recording. (Id.).

Petitioner is being detained at the Adelanto Ice Processing Center in Adelanto, California. (Id. at ¶¶ 2, 11; see https://locator.ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody

of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53

F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner is Entitled to Habeas Relief.

Petitioner claims that her arrest and detention on July 25, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process. (See Petition at 12-14). Specifically, Petitioner alleges that she lawfully arrived in the United States in 2024 on a B-1/B-2 visa, and that she was included on her husband's application for asylum and thus has pursued lawful immigration status pursuant to the laws and instruction of the government. During the pendency of her asylum application, Petitioner has complied with all requirements of the process, and the government has permitted her to remain free and at liberty while exercising authority over her application for immigration relief. (Petition at ¶¶ 21-23). Petitioner has applied for – and received – government authorization for employment, and has been issued a social security card. (Id. at ¶ 24). She has lived openly at a known address,

lawfully worked, established community ties, and has maintained a "spotless" record with no criminal history. (Id.).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. J. G. G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884- TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal. Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal. July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL

797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, such as applying for asylum, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully, pursuant to a B-1/B-2 nonimmigrant visa, and thereafter proceeded through the established lawful process to apply to the government for asylum. (Petition at ¶¶ 21-23). During the two and a half years that Petitioner has been present in the country, the government accepted her asylum application, granted her employment authorization and issued her a social security number. (Id.). Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of her immigration application, or since February 2024. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over her legal proceedings, all the while permitting her to remain free and at liberty while her application was pending.

/ / /

/ / /

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process she is owed before the government may take that liberty interest away. Petitioner claims that due process was required before she was taken into custody. Petitioner argues that the appropriate habeas remedy is for her to be released back to the community. (Petition at 14). The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before she was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief. See Ortega, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

/ / /

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide her with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).And where a petitioner has not received a hearing or other process prior to the revocation of his liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required her immediate arrest and detention when she arrived at LAX on July 24, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey v. Brewer, 408 U.S. 471, 483 (1972) (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court

finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

As for the appropriate remedy for the government's due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. See e.g., Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months");; Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting Temporary Restraining Order and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); ; Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

/ / /

/ / /

/ / /

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have enjoyed absent the due process violation—that is, she should be released from detention. See, e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbir v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

Accordingly, Petitioner's claim that her right to due process was violated by the lack of notice and hearing prior to his arrest and detention (Petition at 12) is granted. The remaining claims in the Petition are denied as moot in light of the relief granted on this claim.

## V.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Mei Yao (A# 233-897-452) from custody, subject to the same conditions (if any) that she was subject to at the time she was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during her arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in

/ / /

/ / /

/ / /

concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: September 10, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE